# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICHAEL ANTONIO DELGADO,**

        **Plaintiff,**

**v.**                                                          **Case No:   6:15-cv-989-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

# MEMORANDUM OF DECISION

Michael Antonio Delgado (the "Claimant"), appeals to the District Court from a final

decision of the Commissioner of Social Security (the "Commissioner") denying his application for

supplemental security income, in which he alleged a disability onset date of August 31, 2008,

which was later amended to January 1, 2012.  Doc. No. 1; R. 42, 167.  Claimant argues the

Administrative Law Judge (the "ALJ") erred by: 1) finding he does not meet Listing 12.05(B) or

(C); 2) finding his Hepatitis C is not a severe impairment; and 3) failing to consider the side effects

of his medications.  Doc. No. 16 at 14-19, 25-26, 27-28.  Claimant argues the matter should be

reversed for an award of benefits or, in the alternative, remanded for further proceedings.  *Id*. at

29-30.  For the reasons set forth below, the Commissioner's final decision is **REVERSED** and

**REMANDED** for further proceedings.

## I.        STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.   The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.   ANALYSIS.

This appeal primarily centers on whether the ALJ erred in finding Claimant does not meet Listing 12.05(B) or (C).  Doc. No. 16 at 14-25.   Claimant argues the ALJ erred in finding he does not meet Listing 12.05(B) or (C).  *Id*. at 14-19.   The Commissioner argues the ALJ properly determined Claimant does not meet Listing 12.05(B) or (C).  *Id*. at 19-25.

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the impairments contained in the Listing of Impairments (the "Listings").   The Listings identify impairments which are considered severe enough to prevent a person from engaging in gainful activity.   20 C.F.R. § 416.925(a).   By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his or her age, education, or

work experience.  *Id.*   Thus, the sequential evaluation process ends if the claimant establishes the existence of a listed impairment.  *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

If the claimant contends he or she meets a listed impairment, as is the case here, Doc. No. 16 at 14-19, the claimant bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment."  *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (per curiam).   In doing so, the claimant must have a diagnosed condition included in the Listings.  *Id.*   In addition, the claimant must provide objective medical evidence documenting that his or her impairment meets the specific criteria of the applicable listing.  *Id.*; *accord Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam).   "An impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Claimant argues he meets Listing 12.05(B) and (C), Doc. No. 16 at 14-19, which provides, in relevant part, as follows:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied[:]
>
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.   Accordingly, Claimant must: 1) satisfy the diagnostic criteria in the introductory paragraph of 12.05, and 2) either have a valid verbal, performance, or full scale IQ of 59 or less to meet Listing 12.05(B), or have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related functional limitation to meet Listing 12.05(C).   *Id.*

On March 16, 2012, Dr. William Austin, a psychologist, conducted a one-time mental health evaluation of Claimant.   R. 436-39.   Dr. Austin administered the Wechsler Adult Intelligence Scale – Fourth Eeddition (WAIS-IV) IQ test, resulting in a full scale IQ of 48.   R. 438.   Dr. Austin explained a full scale IQ score of 48 places Claimant "within the moderate retardation range of intellectual functioning."   *Id.*   Dr. Austin went on to provide the following statement about the validity of the IQ scores:

> Testing was administered under standard conditions with good examiner/examinee rapport.   It appears that [Claimant] put forth his best effort, and that the test results are valid.   Based on his adaptive functioning, and marginal cooperation during testing [(sic)] is an underestimation of his true intellectual capacities.

*Id.* (emphasis added).   Thus, Dr. Austin made contradictory statements about Claimant's effort during the test, which directly relate to the validity and accuracy of the test results.   *Id.*   In conclusion, Dr. Austin diagnosed Claimant with, among other things, bipolar I disorder, unspecified, polysubstance abuse and mild mental retardation.   R. 439.   There is no other evidence addressing Claimant's IQ.   *See generally* R. 289-572.

At step three of the sequential evaluation process, the ALJ considered whether Claimant met Listing 12.05(B) and/or (C), stating the following:

> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less.   During examination, [Dr. Austin] administered the

> [WAIS-IV] and <u>concluded the results were marred by the claimant's</u> <u>less than full cooperation.   Dr. Austin also noted the results are an</u> <u>"under-estimation" of the claimant's true intellectual capabilities.</u>
>
> <u>Finally, the "paragraph C" criteria</u> of listing 12.05 are not met because the <u>claimant does not have a valid verbal, performance, or</u> <u>full scale IQ of 60 through 70</u> and a physical or other mental impairment imposing an additional and significant work-related limitation of function.   <u>Again, Dr. Austin indicated when the</u> <u>claimant was taking the WAIS-IV, he was only marginally</u> <u>cooperative and the results were felt to be an under-estimation of the</u> <u>claimant's capabilities.</u>

R. 25 (emphasis added).   Accordingly, notwithstanding Dr. Austin's opinion that the IQ scores were "valid," the ALJ found the scores invalid based solely on Dr. Austin's opinion that the scores were an underestimation of Claimant's intellectual capabilities.   *Id.*

Claimant argues the IQ scores are valid, and the ALJ's finding to the contrary is not supported by substantial evidence.   Doc. No. 16 at 14-19.   Further, Claimant argues that if the ALJ doubted the validity of the IQ scores, she should have either sought clarification from Dr. Austin or ordered additional testing.   *Id.* at 17 (citing *Berryman v. Massanari*, 170 F. Supp. 2d 1180, 1185 (N.D. Ala. 2001)).   In response, the Commissioner essentially argues the ALJ properly relied on Dr. Austin's opinion concerning the IQ scores being an underestimation of Claimant's intellectual capabilities in determining the scores were invalid.   *Id.* at 22-23.   Further, the Commissioner argues the ALJ's determination concerning the IQ scores is supported by the longitudinal record and the opinions of state-agency psychological consultants, who reviewed Dr. Austin's opinion and questioned the validity of the IQ scores.   *Id.* at 23-25.

It is undisputed, Dr. Austin's statements bearing on the validity of the IQ scores are inconsistent.   The ALJ, faced with this inconsistent evidence, found Claimant's IQ scores were invalid solely because of Dr. Austin's explanation that scores were an underestimation of Claimant's intellectual capabilities.   R. 25.   An ALJ may rely on such statements in determining

whether an IQ score is valid.   *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897 (11th Cir. 2013) ("[T]he record supports the conclusion that, due to her limited effort during examination . . . [the claimant's] IQ scores were not valid and underestimated her actual level of functioning"); *Dupree v. Colvin*, 2015 WL 8568874, at *3-4 (S.D. Ga. Nov. 17, 2015) (citing authority).[1] However, this case presents a unique situation, because, unlike the cases cited above, the examining physician expressly opined that Claimant's IQ scores were valid, and, only after doing so, opined the scores were an underestimation of Claimant's intellectual capabilities.   The ALJ ultimately credited Dr. Austin's opinion that the IQ scores were an underestimation of Claimant's intellectual capabilities, but offered no explanation why he found that opinion more credible than Dr. Austin's opinion that the IQ scores were valid.   R. 25.   As a result, the Court is unable to conduct a meaningful review of whether the ALJ's determination to credit Dr. Austin's opinion that the IQ scores were an underestimation of Claimant's intellectual abilities is supported by substantial evidence.   *See e.g.*, *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1371-72 (N.D. Ga. 2006) (ALJ has "exclusive power to resolve conflicts in the evidence," but must state reasons, supported by substantial evidence, for his or her conclusions); *Kelley v. Colvin*, 2014 WL 1410406, at *3 (M.D. Ala. Apr. 11, 2014) ("When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion regarding the plaintiff's capacity for work over another.").

The Commissioner attempts to provide the explanation lacking in the ALJ's decision by

---

[1] Even if an IQ score is found to be valid, it "need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *see Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability).   However, in this case, the ALJ did not find Claimant's IQ score to be inconsistent with other evidence of record, such as his daily activities and behavior.   R. 25.

highlighting portions of the medical record and opinion evidence she (not the ALJ) maintains supports the ALJ's determination that Claimant's IQ score is invalid. Doc. No. 16 at 23-25. The Court, however, will not affirm the Commissioner's decision based on such post hoc rationalization. *See, e.g.,* *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (per curiam) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)). On this record, the Court simply finds the ALJ's determination to credit Dr. Austin's opinion that the IQ scores were an underestimation of Claimant's intellectual capabilities, over his opinion that the IQ scores were valid, is not supported by substantial evidence. Therefore, the Court finds the matter should be reversed.[2]

Claimant argues the case should be remanded for an award of benefits because Claimant meets Listing 12.05. Doc. No. 16 at 29. Reversal for an award of benefits is only appropriate either where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, or where the Claimant has suffered an injustice. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (disability beyond a doubt warrants award of benefits); *see Walden*, 672 F.2d at 840. The matter is being reversed due to the ALJ's lack of supporting explanation why she found Dr. Austin's opinion that the IQ scores were an underestimation of Claimant's intellectual capabilities more credible than his opinion that the IQ scores were valid. This error simply requires the ALJ to make an explicit finding, supported by substantial evidence, regarding Dr. Austin's conflicting statements as to the validity of the IQ scores. Of course, the ALJ may

---

[2] This issue is dispositive and therefore there is no need to address Claimant's remaining arguments. *See Diorio v. Heckler,* 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors).

also elect to seek clarification from Dr. Austin or order additional testing, and should do so if the current record lacks substantial evidence for resolving the conflicting statements at issue. *Cf. Berryman*, 170 F. Supp. 2d at 1185 ("If the ALJ was in doubt as to the validity of the plaintiff's I.Q. scores, he should have sought clarification of the test results from [the physician who performed the IQ test], or ordered additional testing."). At this point in time, the Court finds the record does not establish disability beyond a doubt. Further, Claimant has not argued, nor does the Court find, that he suffered an injustice. Accordingly, Claimant's request to remand for an award of benefits is not well-taken, and the matter shall be remanded for further proceedings.

## III.   **CONCLUSION.**

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2.   The Clerk is directed to enter judgment for Claimant and close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 16, 2016.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Julia A. Terry
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801